UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VICKIE GWEN CUMBIE,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security Administration,<br><br>Defendant. | NO: 12-CV-5033-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 15, 18).  Plaintiff is represented by David L. Lybbert.  Defendant is represented by Jeffrey R. McClain.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed.  There being no reason to delay a decision, the hearing set for November 1, 2013, is vacated and this matter is submitted without oral argument.  For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 688 F.3d 1144, 1149 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to

establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income (SSI) payments on September 20, 2007, alleging an onset date of February 1, 2002. Tr. 150-62. Her claims were denied initially and on reconsideration. Tr. 87-90, 91-93. Plaintiff filed a timely request for a hearing (Tr. 94) and appeared with an attorney at a video teleconference hearing before an administrative law judge ("ALJ") on June 10, 2010. Tr. 52-82.

The ALJ issued his decision on August 17, 2010, finding that Plaintiff was not disabled under the Act. Tr. 15-27. On February 3, 2012, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), making the ALJ's decision the Commissioner's final decision that is subject to judicial review. 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

Plaintiff contends she is disabled due to fibromyalgia, tarsal tunnel syndrome, bilateral carpal tunnel syndrome, depression, pain disorder, PTSD, and borderline IQ. ECF No. 16 at 5. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 20, 2007, the protective filing date of her application. Tr. 20. At step two, the ALJ found that Plaintiff had

no medical signs or laboratory findings to substantiate the existence of any severe medical impairment. Tr. 20. In other words, the ALJ determined there was no evidence that Plaintiff had an impairment that would impose any restriction that is more than minimal. Tr. 25. Since Plaintiff did not have any severe impairment, nor a combination of non-severe impairments which would be considered severe, the ALJ found she was categorically not disabled. Tr. 25. Despite having found Plaintiff categorically not disabled at step two, the ALJ made alternative findings at step five, that Plaintiff was not disabled under the Grids, and using a vocational expert, Plaintiff could perform other work that exists in significant numbers in the national economy. Tr. 26-27.

## ISSUES

Plaintiff, Vickie Gwen Cumbie, seeks judicial review of the Commissioner's final decision denying her Title XVI Supplemental Security Income. Plaintiff has framed three issues for review: (1) whether at step two the ALJ erred in determining that she did not have any severe impairments (ECF No. 16 at 6-10); (2) whether the ALJ's hypothetical question to the vocational expert properly accounted for Plaintiff's limitations (*id*. at 10-12); and (3) whether this Court can reopen Plaintiff's prior Title II disability application (*id.* at 4-5, 12).

The Commissioner contends he supported the final decision in this matter with substantial evidence and it is free of any harmful legal error.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

## DISCUSSION

**A. Step Two, Severe Impairment**

Plaintiff argues that the ALJ erred in finding that she did not have a severe mental impairment at step two. ECF No. 16 at 6-10. Plaintiff seems to misapprehend that a step two finding of a severe impairment does not itself result in a finding of disability. Step two merely screens out groundless claims. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (*citing Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). While, as discussed more fully below, the Commissioner may have been justified in stopping his analysis at step two in this case, he proceeded to step five of the sequential evaluation process, benefiting Plaintiff by giving her a full evaluation and making the record clear for this Court's review. Curiously, Plaintiff insists that she has a severe impairment or combination of impairments (a step two analysis) and that this matter must be remanded for "retrial" (ECF No. 20 at 10) or payment of benefits (ECF No. 16 at 12). Having passed through the step 2 window, Plaintiff cannot show she was harmed by the Commissioner's step two finding.

The Court will proceed to address Plaintiff's arguments that the ALJ's hypothetical question to the vocational expert did not properly account for Plaintiff's limitations at step five.

///

B. **The ALJ's Residual Functional Capacity Assessment, Step Five**

Plaintiff contends the ALJ did not properly account for Plaintiff's limitations. ECF No. 16 at 10-12. The real issue here is whether the ALJ properly concluded Plaintiff's impairments did not cause any significant functional limitation such that it impacted her ability to perform other work that exists in significant numbers in the national economy.

In order to perform its review, this Court must look to the underlying medical conditions and their effects to determine whether substantial evidence supports the ALJ's finding. Plaintiff boldly states that she has been <u>diagnosed</u> and <u>treated</u> for fibromyalgia by Drs. Zhang, Chiou and Washington. ECF No. 16 at 7-8; ECF No. 20 at 3-6. The Commissioner first argues that Plaintiff's malady does not meet the requisites to be considered fibromyalgia pursuant to the newly enacted social security ruling, SSR 12-2, available at 2012 WL 3017612. The Court finds this argument unavailing. Next, the Commissioner observes that none of Plaintiff's doctors diagnosed fibromyalgia. The Court agrees. Dr. Zhang made no mention of fibromyalgia in his June 18, 2004 report, Tr. 387, and merely noted on April 22, 2004, that Plaintiff claimed she had been "told that she had fibromyalgia," Tr. 389. On October 18, 2006, Dr. Chiou mentioned Plaintiff "has a long history of fibromyalgia" and included fibromyalgia in his assessment / plan section, but made no objective findings or diagnosis. Tr. 364. Indeed, Dr. Chiou

observed Plaintiff's "muscle power 5/5 in all extremities, hence doing very well." *Id*. Dr. Washington's September 25, 2007 entry shows the source of his understanding of Plaintiff's condition set forth in the history section of his records:

> The patient is a 32-year old female under the care of Dr. Chiou with generalized diffuse musculoskeletal pain involving all four extremities. The patient was diagnosed as having possibly fibromyalgia. She has been seen by both Dr.Zhang as well as Dr. Cancado in the past, neither of which found any significant problems.

Tr. 349. On October 22, 2007, Dr. Washington sent her back to Dr. Chiou commenting, "[t]he patient does not have objective evidence of a neuromuscular problem." Tr. 345. Both parties have spent a considerable amount of time arguing whether or not Plaintiff actually has fibromyalgia, an issue the Court does not find dispositive one way or another. Given the ALJ's alternative findings at step 5, the issue here is whether Plaintiff's ailment has caused any significant functional limitations.

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. § 416.908. A claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 416.908; 416.929(a). Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or her symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).

1  As long as the impairment "could reasonably be expected to produce [the]
2  symptoms," 20 C.F.R. §416.929(b), the claimant may offer a subjective evaluation
3  as to the severity of the impairment. *Id.* This rule recognizes that the severity of a
4  claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347
5  (quotation and citation omitted).

6  Only Plaintiff testified as to her subjective limitations resulting from her
7  alleged fibromyalgia. Yet, the ALJ found that she was not credible when
8  describing her limitations from pain and discomfort. Tr. 23, 25. The ALJ found
9  her daily activities inconsistent with her complaints. Significantly, she testified
10 that she was independently caring for and raising six children and two
11 grandchildren with occasional assistance from her mother (twice a week) and not
12 taking any prescription medicine. Tr. 23, 25, 59, and 66. Plaintiff has not
13 challenged the ALJ's detailed and specific credibility findings based on other
14 undisputed, objective evidence in the record.

15 Plaintiff claims her tarsal tunnel syndrome was diagnosed and treated by Dr.
16 Cancado on April [1]3, 2005. ECF No. 16 at 8. The ALJ recognized that Dr.
17 Cancado did find electrodiagnostic evidence of damage consistent with tarsal
18 tunnel syndromes, worse on the left side." Tr. 22, 256. But Dr. Cancado did not
19 treat Plaintiff rather he referred her to Darian Van Gorkum, D.P.M. Further
20 supporting the ALJ's finding, Dr. Van Gorkum did not see Plaintiff for more than a

year later on June 1, 2006. His plan was to offer Plaintiff "conservative care," and he expressed that "[s]urgical intervention of the tarsal tunnel is not recommended." Tr. 261. Finally, the ALJ noted that Plaintiff's treatment did not occur for another six months after that, on January 8, 2007, when she was merely fitted for orthotics. Tr. 262. Despite Plaintiff's claim to the contrary, Dr. Vides did not diagnose tarsal tunnel syndrome. Tr. 381. Neither did Dr. Chiou diagnose carpal tunnel syndrome. Tr. 369.

Again, despite Plaintiff's protestation otherwise, ECF No. 20 at 7, there is no evidence in the record supporting a diagnosis of carpal tunnel syndrome. Indeed, on April 13, 2005, Dr. Cancado found there to be no electrodiagnostic evidence of an entrapment of the median nerve at the wrists (carpal tunnel syndrome). . ." Tr. 287. Another test on October 5, 2007 shows "normal nerve conduction . . . of the left and right median and ulnar nerves." Tr. 351. The only reference to testing that shows carpal tunnel syndrome is the obvious medical transcription error contained in Dr. Chiou's September 27, 2006 report wherein he states, "The EMG and the nerve conducting studies show damage of her posterior tibial nerve and consistent with bilateral carpal tunnel syndrome." Tr. 424. The tibial nerve relates to the leg, not the arm or wrist. Furthermore, Dr. Chiou's subsequent reports correct this transcription error. For instance, Dr. Chiou's report of October 18, 2006, Tr. 428,

correctly refers to the ailment as <u>tarsal</u> tunnel syndrome, with no further reference whatsoever in his records to <u>carpal</u> tunnel syndrome.

While Dr. Van Gorkum's January 9, 2007, residual functional capacity evaluation was not specifically addressed by the ALJ, it is of no consequence. Not only did Dr. Van Gorkum not quantify the duration of his assessment, he indicated that his treatment would improve her condition (orthotics and medication) and she was presently able to perform sedentary work. Tr. 362. Obviously, this assessment was based in part on Plaintiff's self-reported limitations to Dr. Van Gorkum, a year and a half after Dr. Cancado first referred her, without any intervening treatment. However, as discussed above the ALJ rejected the extent of her self-described limitations based on her inconsistent daily activities. Tr. 23, 25.

Plaintiff once again misrepresents the record concerning her mental state. For instance, she claims she was "diagnosed and treated" for PTSD by Dr. Drury, a Ph.D. and "Dr. Valdez, a psychiatrist, MD." ECF No. 16 at 8. First, Mr. Valdez is a licensed mental health counselor not a psychiatrist or a medical doctor. But more importantly, Dr. Drury and Mr. Valdez specifically "rule[d] out Posttraumatic Stress Disorder." Tr. 266. She also claims she was diagnosed with chronic depression by a psychiatric nurse. ECF No. 16 at 8. Not only did Nurse Wise not diagnose chronic depression, she concluded virtually the opposite in her report:

> Based on the today's interview and the information that has been provided by Vickie it does not appear that she needs the State of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

> Washington access to care standards or community mental health center. She was encouraged to seek help from her primary care physicians as an alternative intervention. Because of her denial of symptoms of depression or any other major mental illness and her complaints of chronic pain and the need for treatment for her chronic pain. She was encouraged to talk with her current medical care providers to assure that her pain issues are addressed appropriately.

Tr. 541.

Substantial evidence in the record supports the ALJ's finding that rejects any diagnosis of borderline intellectual functioning or other mental impairment preclusive of learning or working. Tr. 25. Plaintiff completed her GED and completed approximately one year of college with average grades. Tr. 25, 55, 65-66, 488.

The ALJ gave specific and legitimate reasons for rejecting the ambiguous and qualified opinions of Dr. Drury and Mr. Valdez. Tr. 25. The ALJ also specifically considered Dr. Penney Stringer's letter dated May 28, 2010. Tr. 24. A complete copy is contained in the record at least once. Tr. 252-53. Substantial evidence in the record supports the ALJ's rejection of Dr. Stringer's ultimate conclusion that Plaintiff is not able to work and is in fact disabled. Tr. 24, 252. Most decisively, as the ALJ observed, Dr. Stringer herself wrote, Plaintiff could greatly improve her functioning with proper education about food allergies and celiac disease, how diet affects the body, and with better motivation and means to purchase healthy foods. *Id.* Substantial evidence in the record supports the ALJ's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

1  conclusion as to Plaintiff's limitations and her residual mental functional capacity,

2  not Dr. Stringer's vague and qualified opinions.

3      The hypothetical question posed to the vocational expert is supported by

4  substantial evidence of Plaintiff's limitations, both physical and mental. Tr. 74-77.

5  The vocational expert testified to numerous jobs that exist in the national economy

6  for an individual with Plaintiff's age, education, work experience, and residual

7  functional capacity. Tr. 26, 76-77.

8      Accordingly, the ALJ did not err in finding Plaintiff was not disabled under

9  the Act.

10    C. **Jurisdiction to Reopen the Denied Title II Application**

11      At the administrative hearing, Plaintiff's counsel asked the ALJ to reopen a

12  prior Title II application with an alleged onset date of October 1, 2005 (Tr. 72).

13  The ALJ denied this request and considered only the Title XVI application, which

14  was filed on September 20, 2007 (Tr. 18). Plaintiff asks this Court to find her

15  "disabled as of October 1, 2005" and award "benefits all the way back to and

16  considering her application filed in 2005." ECF No. 16 at 12.

17      The Social Security Act limits judicial review of the Commissioner's

18  decisions to "any final decision . . . . made after a hearing." 42 U.S.C. § 405(g). A

19  decision not to reopen a prior, final benefits decision, however, is discretionary and

20  not a final decision; therefore, it is not subject to judicial review. *Califano v.*

*Sanders*, 430 U.S. 99, 107-09 (1977); *Evans v. Chater*, 110 F.3d 1480, 1482 (9th Cir. 1997). *Sanders*, however, recognized one exception "where the Secretary's denial of a petition to reopen is challenged on constitutional grounds." 430 U.S. at 109. That exception has not been alleged here. Thus, this Court is without jurisdiction to consider Plaintiff's prior Title II application which was denied.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 18) is **GRANTED**.

3. The hearing set for November 1, 2013, is **VACATED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** this file.

**DATED** this 25th day of January, 2013.

*[signature]*

THOMAS O. RICE
United States District Judge